UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

| | |
|---|---|
| JUAN M. PRECIADO, <br> Plaintiff, <br> v. <br> ANDREW SAUL, <br> Defendant. | Case No. 18-cv-07107-RMI <br><br> **ORDER ON MOTIONS FOR SUMMARY JUDGMENT** <br> Re: Dkt. Nos. 27, 30 |

Plaintiff seeks judicial review of an administrative law judge ("ALJ") decision denying his application for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. On May 1, 2015, Plaintiff filed his applications for disability benefits alleging an onset date of December 31, 2008. *See Administrative Record*[1] ("*AR*") (dkt. 16) at 20. The ALJ denied the applications on November 20, 2017. *Id*. at 31. Plaintiff's request for review was denied by the Appeals Council on September 17, 2018 (*id*. at 1-6), and thus, the ALJ's decision is the "final decision" of the Commissioner of Social Security which this court may review. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Both parties have consented to the jurisdiction of a magistrate judge (dkts. 11, 12), and both parties have moved for summary judgment (dkts. 27, 30). For the reasons stated below, the court will grant Plaintiff's motion for summary judgment, and will deny Defendant's motion for summary judgment.

## LEGAL STANDARDS

The Commissioner's findings "as to any fact, if supported by substantial evidence, shall be

---

[1] The *AR*, which is independently paginated, has been filed in several parts as a number of attachments to Docket Entry #16. *See* (dkts. 16-1 through 16-14).

conclusive." 42 U.S.C. § 405(g). A district court has a limited scope of review and can only set aside a denial of benefits if it is not supported by substantial evidence or if it is based on legal error. *Flaten v. Sec'y of Health & Human Servs*., 44 F.3d 1453, 1457 (9th Cir. 1995). Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019); *Sandgathe v. Chater*, 108 F.3d 978, 979 (9th Cir. 1997). "In determining whether the Commissioner's findings are supported by substantial evidence," a district court must review the administrative record as a whole, considering "both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998). The Commissioner's conclusion is upheld where evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

## SUMMARY OF THE RELEVANT EVIDENCE

Plaintiff's application alleged disability due to: anxiety, major depression with paranoid features, and chronic back and right forearm pain and weakness. *AR* at 250. The ALJ found Plaintiff's degenerative disc disease, anxiety, and substance abuse were severe. *Id*. at 23

*The Medical Evidence*

In August of 2015, Plaintiff was examined by agency consultant Dr. Paul Martin, who diagnosed Plaintiff with recurrent, mild depressive disorder, anxiety disorder NOS, and pain disorder. *Id*. at 337. As to the functional assessment, Dr. Martin found that Plaintiff had only mild limitations in work-related abilities. *Id*. at 337-38.

Plaintiff submitted records from treating providers Drs. Matthew Fentress, Ken Parker, and Mauricio Lask as well as Nurse Practitioner ("NP") Hallie Chertok and Licensed Clinical Social Worker ("LCSW") Kari Jennings-Parriott. On November 19, 2010, NP Chertok evaluated Plaintiff for back pain and high blood pressure, and Plaintiff reported that he experienced depression, insomnia, and anxiety. *Id*. at 344. Plaintiff followed up with Ms. Chertok and stated he was concerned about his depression, stress, lack of sleep, suicidal ideation associated with flare ups of back pain, and difficulties with relationships due to anger problems. *Id*. at 356. NP Chertok discussed treatment options for Plaintiff's depression and anxiety including a referral to a

specialist – Ken Parker, Ph.D. *Id*. Dr. Parker conducted an initial evaluation that same day and noted Plaintiff had medium level depression symptoms, pain, and sleep problems. *Id*. at 357. Plaintiff was treated by both Nurse Practitioner Chertok and Dr. Parker once a month up until August of 2012. On January 16, 2015, Dr. Mauricio Lask, Psy.D., conducted an initial assessment of Plaintiff's mental health. *Id*. at 428. Dr. Lask reported that Plaintiff's anxiety predominated, and Plaintiff had episodes of acute anxiety that lasted 1-2 hours at a time and happened a few times a month. *Id*. He also noted that Plaintiff presented a danger to himself because of suicidal ideation. *Id*. He diagnosed Plaintiff with depression NOS and anxiety NOS. *Id*. at 429.

On September 1, 2016, LCSW Jennings-Parriott conducted an initial evaluation of Plaintiff for depression, anxiety, and panic attack disorder. *Id*. at 573-76. Plaintiff was guarded throughout the session and had an anxious and mistrustful attitude toward LCSW Jennings-Parriott. *Id*. Plaintiff stated that he had attempted suicide multiples, and the most recent attempt occurred 3 months prior, for which he was hospitalized. *Id*. at 573. He reported that the suicidal thoughts come out of nowhere, he has felt depressed since 2009, and he has poor concentration, isolates himself from friends and family, has difficulty sleeping, and feels worthless. *Id*. As for his anxiety, Plaintiff reported worrying constantly, irritability, and negative self-talk; and, on average, he had 3 panic attacks per week where he got overwhelmed and felt like he was going to die. *Id*. During a panic attack, he experiences sweating, shaking, chest pains, and heart palpitations. *Id*. He fears having these attacks randomly so he stays home. *Id*. Regarding his social history, Plaintiff explained that he dropped out of school in the 9th grade because other students bullied him for having a learning disability. *Id*. Plaintiff also had a history of trauma from community violence. *Id*. at 574. He witnessed several stabbings, shootings, and violent fights where people died, and Plaintiff was mugged and jumped many times during his teenage years, and also lost his grandfather to suicide. *Id*. As far as medication, Plaintiff explained that he had taken Prozac but did not find it helpful and also expressed concerns over the side effects. *Id*. In 2009, his depression became so bad that he was unable to work. *Id*. Upon examination, LCSW Jennings-Parriott noted Plaintiff had a depressed and anxious mood, flat affect, underproductive speech, slowed thinking, had a depressive and self-deprecatory thought process, attention/concentration issues, minimal

3

insight, and moderately impaired ability to make reasonable decisions. *Id*. at 575. She diagnosed Plaintiff with recurrent, chronic major depression, panic disorder, and generalized anxiety disorder. *Id*. She recommended a follow up visit to establish a relationship and work to reduce Plaintiff's symptoms. *Id*. On April 12, 2017, Plaintiff visited LCSW Jennings-Parriott to re-establish care. *Id*. at 566-67. At the visit, Plaintiff reported feeling depressed daily, anhedonia, isolation from peers, low energy, and difficulty concentrating; he also felt anxious, hypervigilant in his community, isolative, racing and scattered thoughts, as well as flashbacks. *Id*. at 566. However, he denied suicidal ideation. *Id*. He scored positive for PTSD. *Id*. LCSW Jennings-Parriott's exam of Plaintiff noted a depressed mood, flat affect, partial insight, and depressive ruminations. *Id*. at 567. She diagnosed Plaintiff with recurrent, chronic depression. *Id*.

*The ALJ Hearing*

At the hearing, the ALJ began by questioning Plaintiff about his work history; Plaintiff detailed several warehouse jobs that required heavy lifting of objects such as kitchen appliances and sheet rock. *Id*. at 45-48. Plaintiff explained that he believed his anxiety and depression were linked to his inability to work. *Id*. at 53. For a long time, he denied having depression because he did not believe in it. *Id*. at 54. However, in 2008, his depression became so severe that he realized he was depressed and probably had been since he was a child. *Id*.

Plaintiff explained that his back pain caused him incredible stress and anger such that he suffered chest pains, heavy breathing, faintness, and feelings that he was going to die. *Id*. at 55. Plaintiff went to the emergency room for these symptoms and was informed that he was not having heart issues but was experiencing panic attacks. *Id*. at 55-56. Plaintiff had taken a few different medications to treat his symptoms but did not get relief; he found relief with talk therapy. *Id*. at 56. At the time of the hearing, Plaintiff was going to therapy once a month. *Id*. at 57. Although his therapists had encouraged him to take medications, he feared the side effects of medication. *Id*. at 57-58.

Upon questioning from his attorney, Plaintiff explained that he wakes up every day very depressed and anxious, and at times the feelings are so intense that he feels suicidal. *Id*. at 67. He explained that he used to socialize, play video games and sports, and was a baseball and football

4

fanatic, but now he does not enjoy anything. *Id*. His appetite is decreased, and he only eats dinner alone in his bedroom. *Id*. at 68. He also has trouble concentrating on conversations, TV, or videogames and feels "fog headed all the time." *Id*. at 69.

## THE FIVE STEP SEQUENTIAL ANALYSIS FOR DETERMINING DISABILITY

A person filing a claim for social security disability benefits ("the claimant") must show that she has the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment" which has lasted or is expected to last for twelve or more months. *See* 20 C.F.R. §§ 416.920(a)(4)(ii), 416.909.[2] The ALJ must consider all evidence in the claimant's case record to determine disability (*see id*. § 416.920(a)(3)), and must use a five-step sequential evaluation process to determine whether the claimant is disabled (*see id*. § 416.920). "[T]he ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983).

Here, the ALJ evaluated Plaintiff's application for benefits under the required five-step sequential evaluation. *AR* at 20-31. At Step One, the claimant bears the burden of showing he has not been engaged in "substantial gainful activity" since the alleged date the claimant became disabled. *See* 20 C.F.R. § 416.920(b). If the claimant has worked and the work is found to be substantial gainful activity, the claimant will be found not disabled. *See id*. While the ALJ found that Plaintiff had engaged in substantial gainful activity since the alleged onset date because he held a job for 3 months in 2011 which provided income over the substantial gainful activity amount, the ALJ proceeded with the sequential analysis. *AR* at 22-23.

At Step Two, the claimant bears the burden of showing that he has a medically severe impairment or combination of impairments. *See* 20 C.F.R. § 416.920(a)(4)(ii), (c). "An impairment is not severe if it is merely 'a slight abnormality (or combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities.'" *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (quoting S.S.R. No. 96–3(p) (1996)). The

---

[2] The regulations for supplemental security income (Title XVI) and disability insurance benefits (Title II) are virtually identical though found in different sections of the CFR. For the sake of convenience, the court will generally cite to the SSI regulations herein unless noted otherwise.

ALJ found that Plaintiff suffered from the following severe impairments: degenerative disc disease, anxiety, and substance abuse. *AR* at 23.

At Step Three, the ALJ compares the claimant's impairments to the impairments listed in appendix 1 to subpart P of part 404. *See* 20 C.F.R. § 416.920(a)(4)(iii), (d). The claimant bears the burden of showing her impairments meet or equal an impairment in the listing. *Id*. If the claimant is successful, a disability is presumed and benefits are awarded. *Id*. If the claimant is unsuccessful, the ALJ assesses the claimant's residual functional capacity ("RFC") and proceeds to Step Four. *See id*. § 416.920(a)(4)(iv), (e). Here, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments. *AR* at 23-25. Next, the ALJ determined that Plaintiff retained the RFC to perform light work except he can lift, carry, push, and pull 20 pounds occasionally and 10 pounds frequently; sit for 6 hours per 8-hour workday; and stand and/or walk for 6 hours per 8-hour workday; and frequently respond appropriately to supervisors, coworkers, and the public. *Id*. at 25-29. Additionally, Plaintiff's RFC was limited to simple work-related decisions, and provided for Plaintiff being off task 5% of the time in an 8-hour workday with normal breaks and would be absent from work 1 day per month. *Id*.

At Step Four, the ALJ determined that Plaintiff was not capable of performing his past relevant work. *Id*. at 29. Lastly, at Step Five, the ALJ concluded that based on the RFC, Plaintiff could perform the requirements of janitor, usher, and advertising materials distributor, and thus had not been under a disability as defined in the Social Security Act, from December 31, 2008, through the date of the issuance of the ALJ's decision, November 20, 2017. *Id*. at 30-31.

**ISSUES PRESENTED**

Plaintiff presents eight issues for review. Plaintiff assigns error to the ALJ's findings as follows: that Plaintiff's depression was not severe at Step 2; that Plaintiff had worked at substantial gainful activity level since the alleged onset date; that Plaintiff could do his past relevant work; that the ALJ's conclusions regarding the medical evidence was not based on substantial evidence; that the RFC was not supported by substantial evidence; that Plaintiff's impairments did not meet or equal a listed impairment; that the ALJ improperly weighed the

medical evidence; and that Plaintiff's testimony regarding intensity, persistence, and limiting effects was not credible. *See* Pl.'s Mot. (dkt. 27) at 2, 6-20.

**DISCUSSION**

The first issue raised by Plaintiff is that the ALJ erred by finding his depression was not severe. *See* Pl.'s Mot. (dkt. 27) at 6-8. Plaintiff also argues that the ALJ did not properly weigh the medical evidence. *Id*. at 17-19. These issues are interrelated, and the court will analyze them in tandem.

The heart of Plaintiff's argument appears to be that, although the record was scant about how his mental impairments impacted his work-related abilities, the ALJ should not have disregarded his treating physicians' medical opinions. *Id*. at 18. Defendant counters that the ALJ properly weighed the evidence for several reasons: Plaintiff failed to establish regular mental health treatment; records that show the existence of a mental disorder, alone, do not establish mental disability; Plaintiff failed to establish a medical opinion showing mental disability; and that the ALJ gave proper weight to the consultative examiner and state agency consultants. *See* Def.'s Mot. (dkt. 30) at 10-12.

The court will begin with noting that while it is true that it is incumbent on claimants to provide sufficient medical evidence of one or more disabling impairments, it has "long [been] recognized that the ALJ is not a mere umpire, but has an independent duty to fully develop the record[.]" *Higbee v. Sullivan*, 975 F.2d 558, 561 (9th Cir. 1992, as amended Sept. 17, 1992) (*per curiam*); *see also Sims v. Apfel*, 530 U.S. 103, 110-11 (2000) ("Social Security proceedings are inquisitorial rather than adversarial. It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits[.]").

As part of this duty, the ALJ has an obligation to take reasonable steps to ensure that issues and questions raised by medical evidence, particularly evidence from treating physicians, are addressed so that the disability determination is fairly made on a sufficient record of information, be it favorable or unfavorable to the claimant. *See Tidwell v. Apfel*, 161 F.3d 599, 602 (9th Cir. 1999); and, *Cox v. Califano*, 587 F.2d 988, 991 (9th Cir. 1978); *see also* 42 U.S.C. § 421(h). The ALJ has not only the power, but the duty, to "conduct an appropriate inquiry" if the evidence is

ambiguous or inadequate to permit a proper evaluation of a claimant's impairments. *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996). If evidence from a medical source is inadequate to determine if the claimant is disabled, an ALJ may be required to re-contact the medical source, including a treating physician, to determine if additional needed information is readily available. *See* 20 C.F.R. §§ 404.1520b(c)(1), 416.920b(c)(1); *see also Webb*, 433 F.3d at 687 ("[t]he ALJ's duty to supplement a claimant's record is triggered by ambiguous evidence [or] the ALJ's own finding that the record is inadequate"). The responsibility to fulfill this duty belongs entirely to the ALJ; it is not part of the claimant's burden. *See e.g., White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2001); *see also Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) ("This duty extends to the represented as well as to the unrepresented claimant . . . The ALJ's duty to develop the record fully is also heightened where the claimant may be mentally ill and thus unable to protect her own interests. Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to conduct an appropriate inquiry . . . including: subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record.").

Here, it cannot be reasonably said that the ALJ discharged the "duty to investigate the facts and develop the arguments both for and against granting benefits." *Sims*, 530 U.S. at 110-11. The ALJ relied on Dr. Martin, who examined Plaintiff one time in 2015, and who, as the ALJ correctly pointed out, underestimated Plaintiff's impairments. *AR* at 24-25. However, throughout the record, there are diagnoses of major depressive disorder, PTSD, panic disorder, and generalized anxiety by treating medical professionals including Drs. Matthew Fentress, Parker, and Lask as well as NP Chertok and LCSW Jennings-Parriott in 2011, 2016, and 2017. Defendant argues that Plaintiff failed to develop the medical record, but that burden does not belong to Plaintiff. That duty falls squarely on the ALJ, especially where, as here, the diagnoses occurred after Dr. Martin's examination in 2015. *See Young v. Heckler*, 803 F.2d 963, 968 (9th Cir. 1986) (in cases of progressively deteriorating conditions, the most recent medical report is the most probative). Moreover, because of Plaintiff's record evidence of major depression, PTSD, anxiety, and panic

8

1 attacks, the ALJ's duty to develop the record was "heightened." *See Tonapetyan*, 242 F.3d at

2 1150; *see also Plummer v. Apfel*, 186 F.3d 422, 434 (3d Cir. 1999) (when there is a suggestion of

3 mental impairment, an ALJ must inquire into the current status of that impairment and its possible

4 effect on a claimant's ability to work); *Jones v. Bowen*, 829 F.2d 524, 526 (5th Cir. 1987) (a

5 claimant only needs to raise suspicion about a mental impairment to trigger the duty to develop the

6 record); *Hilliard v. Barnhart*, 442 F. Supp. 2d 813, 817 (N.D. Cal. 2006) (same)).

In light of the above, because the court finds that further administrative proceedings would serve a useful purpose, the court orders this matter remanded for further development of the record and for a reengagement of the sequential evaluation process from Step 2 forward.

Plaintiff has also argued that the ALJ erred in finding that his impairments did not meet or equal a listed impairment at Step 3; that the RFC was not supported by substantial evidence; and that Plaintiff's testimony regarding intensity, persistence, and limiting effects was not credible. *See* Pl.'s Mot. (dkt. 27) at 2, 6-20. However, because the court is already remanding the case for further proceedings, the court declines to address Plaintiff's remaining arguments. *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [plaintiff's] alternative ground for remand."); *see also Augustine ex rel. Ramirez v. Astrue*, 536 F. Supp. 2d 1147, 1153 n.7 (C.D. Cal. 2008) ("[The] Court need not address the other claims plaintiff raises, none of which would provide plaintiff with any further relief than granted, and all of which can be addressed on remand.").

## CONCLUSION

For the reasons stated above, Plaintiff's motion for summary judgment (dkt. 27) is **GRANTED**, and Defendant's motion for summary judgment (dkt. 30) is **DENIED**. The case is remanded for further proceedings consistent with this opinion.

**IT IS SO ORDERED.**

Dated: March 23, 2020

ROBERT M. ILLMAN
United States Magistrate Judge